Billings, Thomas P., J.
For the reasons that follow, on the Appeal of Defendants/Plaintiffs-in-counterclaim from a Master’s Decision on Fee Advancement, the Initial Report of Special Master on Request for Fee Advancement is AFFIRMED.
BACKGROUND
This case concerns a protracted and hard-fought dispute between warring factions in VBenx Corporation, a Delaware business corporation. After a jury-waived trial on the plaintiffs’ claims, Judge Lauriat found for the defendants on all counts. The counterclaim, litigation of which had been stayed, was then tested by motion to dismiss, with mixed results (though most of the eleven counts survived). The counterclaim counts, and their disposition on the motion to dismiss, are as follows: _
Count Claim Against^ Disposition
1. Breach of fiduciary duty Brent Finnegan, Karen Finnegan[1] Dismissed re Karen Finnegan.
2. Aiding and abetting breach of fiduciary duty Phillips, Karen Finnegan Dismissed re Karen Finnegan.
Conspiracy Brent Finnegan, Karen Finnegan, Phillips Denied.
4. Malicious prosecution Bent Finnegan, Phillips Denied.
5. Intentional interference with prospective relationship Phillips Denied.
6. Breach of fiduciary duty Phillips Denied.
7. Violation of Chapter 93A Brent Finnegan, Phillips, Back Bay Ventures Dismissed re Finnegan and Phillips.
Declaratory judgment Back Bay Ventures No motion brought.
Violation of 27V.S.A. §464 Back Bay Ventures No motion brought.
10 Declaratory judgment Brent Finnegan Denied.
11. Injunctive relief Brent Finnegan, Karen Finnegan, Phillips Denied.
In other words, most of the counterclaims against Finnegan and Phillips remain pending. The current controversy is over their claim that they are entitled to advancement of the fees and costs they have incurred, and will incur in the future, in defending the counterclaims against them. The claim is founded upon section 145 of the Delaware General *456 Corporation Law and section 10 of the VBenx Bylaws. The latter reads, in its totality, as follows:
It being the intent of the corporation to provide maximum protection available under the law to its officers and directors, the corporation shall indemnify its officers and directors to the full extent the corporation is permitted or required by the General Corporation Law of Delaware; provided, however, that the foregoing shall not require the corporation to indemnify or advance expenses to any person in connection with any act, suit, proceeding, claim or counterclaim initiated by or on behalf of such person. In furtherance of and not in limitation of the forgoing, the corporation shall advance expenses, including attorneys’ fees, incurred by an officer or director of the corporation in defending any civil, criminal, administrative or investigative action, suit or proceeding in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such advances if it shall ultimately be determined that he is not entitled to be indemnified by the corporation. The corporation shall have the power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the corporation, or who is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against any liability asserted against such person in any such capacity, or arising out of such person’s status as such, whether or not the corporation has the power to indemnify such person under the General Corporation Law of Delaware.
On July 3, 2013, at the parties’ joint request, I appointed David L. Evans, Esq. to serve as Special Master to hear, and to issue an Initial Report, on the advancement issue. Under the order of appointment,
The Initial Report is appealable to this Court by either side within 15 days of filing. Conclusions of law shall be reviewed under a de novo standard. All findings of fact will stand unless clearly erroneous.
On August 7, 2013 Finnegan and Phillips filed their First. Application for Fee Advancement, seeking $52,239.33 in defense fees and disbursements. This figure was computed as follows:
Fees on fees $10,466.78
Apportionment for Karen Finnegan ($ 1.061.671
Total sought by advancement $52,239.33
The parties filed submissions on the issue and argued it to the Special Master, who produced a report (“Master’s Report”) on October 3, 2013. In it, he awarded Finnegan and Phillips the full amount requested, finding that
the conduct at issue falls within the broad wording of the corporation’s governance documents and is consistent with Delaware law. In particular, the Special Master finds that the Applicants are former officers and directors of VBenx that have been sued by reason of their former positions and that the amounts sought are reasonable. There is a sufficient nexus between the gravamen of the counterclaims and the Applicants’ tenure as fiduciaries of VBenx. In the event that it is ultimately shown that the Applicants are not entitled to indemnification, they are obligated to repay any advancement to VBenx pursuant to their sworn undertaking and Delaware law. This is also without prejudice to the Respondents proffering a workable basis for apportionment in later proceedings with respect to legal services rendered after June 2013.
Master’s Report, p. 13.
The plaintiffs-in-counterclaim have appealed this decision, asserting that Phillips is not entitled to advancement at all; that “Finnegan’s right, if any, is significantly limited”; and that rather than requiring the plaintiffs-in-counterclaim to propose an appropriate allocation between expenses that are and are not subject to advancement, the Special Master “should have required Finnegan and Phillips to allocate their attorneys’ time between effort associated with allegations as to which an advancement obligation existed and effort associated with allegations as to which none existed.”
In Appendix I hereto I have summarized, in greatly abbreviated and chronological form, the allegations of the Counterclaim against Finnegan and Phillips. An even more abbreviated summary would be this.
1. Finnegan and Phillips have both been VBenx shareholders at all material times, and both were originally Directors.
2. In early 2009 while he was still a Director, Phillips allegedly interfered with a prospective business relationship with Harvard University, causing VBenx to lose the business; this is the subject of Counts 5 and 6 of the Counterclaim. For this, Phillips was voted off the Board in March 2009.
3. The struggle for control of VBenx, and the concerted conduct of Phillips and Finnegan, began in July 2009 and continued in earnest through January 2010 and beyond. Finnegan is alleged to have been the mastermind; Phillips, an accomplice.
4. As a result, Finnegan was voted off the Board in January 2010.
5. Finnegan’s and Phillips’s play for control of VBenx continued thereafter, mostly (but not entirely) in the form of “bad faith litigation tactics.”
DISCUSSION
Indemnification of officers and directors of a Delaware corporation is addressed in section 145 of the Delaware General Corporation Law, reprinted in full as Appendix II hereto. Subsections (a) and (b), applicable to direct and derivative suits respectively, give a corporation the power to indemnify a person who is or is threatened with being party to a lawsuit, actual or threatened, direct or derivative, “by reason of the fact *457 that the person is' or was a director, officer, employee or agent of the corporation . . .”
If the officer/director prevails on the merits, indemnification is mandatory (subsection (c)); if not, s/he may still be indemnified “if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe the person’s conduct was unlawful.” (Subsections (a) and (b).) The good faith determination may be made by a majority of disinterested directors, a special committee of directors, independent counsel, or the shareholders. (Subsection (d).)
The issue of advancement (that is, pay-as-you-go reimbursement by the corporation of litigation costs prior to disposition) is covered in subsection (e):
(e) Expenses (including attorneys’ fees) incurred by an officer or director of the corporation in defending any civil, criminal, administrative or investigative action, suit or proceeding may be paid by the corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation as authorized in this section. Such expenses (including attorneys’ fees) incurred by former directors and officers or other employees and agents of the corporation or by persons serving at the request of the corporation as directors, officers, employees or agents of another corporation, partnership, joint venture, trust or other enterprise may be so paid upon such terms and conditions, if any, as the corporation deems appropriate.
Although regulated by statute, indemnity and advancement are, in VBenx and other corporations, delineated by the Bylaws. Each, in other words, is “a right conferred by contract, under statutory auspice.” Stifel Fin. Corp. v. Cochran, 809 A.2d 555, 559 (Del. 2002). While some matters (notably, the right to advancement) are optional under the statute, they may be (and very often are) made mandatory by the Bylaws or other contract. Where the parties have so specified, advancement is mandatory, unless the reimbursement sought is unreasonable or contrary to statute. Homestore, Inc. v. Tafeen, 888 A.2d 204, 212 (Del. 2005); Citadel Holding Corp. v. Roven, 603 A.2d 818 (Del. 1992). Also, if advancement is mandatory under the Bylaws, the corporation bears the burden of proving that it is unavailable as to a particular case, counts, fees, or costs. Imbert v. LCM Interest Holding, LLC, 2013 WL 1934563 (Del.Ch. May 7,2013) at *5; VonFeldtv. Stifel Fin. Corp., 1999 WL 413393 (Del.Ch. Jan. 23, 2006) at*l.
The Stifel decision went on to say,
[T]he indemnification statute should be broadly interpreted to further the goals it was enacted to achieve. The invariant policy of Delaware legislation on indemnification is to “promote the desirable end that corporate officials will resist what they consider unjustified suits and claims, secure in the knowledge that their reasonable expenses will be borne by the corporation they have served if they are vindicated.” Beyond that, its larger purpose is “to encourage capable men to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrily as directors will be borne by the corporation they serve.”
. . . [W]e will “eschew narrow construction of the statute (section 145) where an over literal reading would disserve” these policies.
809 A.2d at 561 (citations omitted); see Underbrink v. Warrior Energy Services Corp., 2008 WL 2262316 (Del.Ch. May 30, 2008) at *7 (‘The ‘by reason of the fact’ standard, or the ‘official capacity’ standard, is interpreted broadly in favor of indemnification and advancement”).
“The right to advancement is broader than the right to indemnification.” Homestore at 212. The entitlement does not depend on an assessment of the merits of the claims being defended or the seriousness of the misconduct alleged, see Radiancy, Inc. v. Azar, 2006 WL224059 Pel.Ch. January 23, 2006) at *1, though an adverse disposition may, under subsections (a), (b), and (e), ultimately trigger the obligation to repay the monies advanced.
Neither section 145 nor the VBenx Bylaws expressly addresses the issue of apportionment in cases in which some claims (or some parts of a single claim) are related to the defendant’s position as a director and officer, and others are not. A handful of cases have dealt with this subject, however. A particularly cogent analysis is to be found in Underbrink v. Warrior Energy Services Corp., supra
Noting that the advancement obligation is “is subject to a reasonableness requirement,” the Vice Chancellor (Parsons) in Underbrink reasoned that “(a) claim not ‘arising out of any event or occurrence related to the fact [the claimant] is or was a director’ would not qualify for indemnification under” the corporate bylaws, and advancement of such fees and expenses would therefore be unreasonable. Id. at *16, citing Citadel Holding Corp. v. Roven, 603 A.2d 818, 823 (Del. 1992).
[A] guiding principle is that “if there is a nexus or causal connection between any of the underlying proceedings . . . and one’s official corporate capacity, those proceedings are ‘by reason of the fact’ that one was a corporate officer, without regard to one’s motivation for engaging in that conduct.” “This connection is established if the corporate powers were used or necessary for the commission of the alleged misconduct.” “Further, the requisite nexus can be established even if the cause of action does not specify a claim of breach of fiduciary duly owed to the corporation.”
2008 WL2262316 at *16 (footnoted citations omitted).
In this case, the Special Master carefully articulated, examined and applied all of these principles, and more. He also appears to have recognized that *458 there are some cases in which it is not possible, at the advancement stage, “to parse between . . . causes of action such that a lesser allocation would be appropriate.” In such a case, “[i]n any eventual dispute over ultimate indemnification, [the corporation] is free to argue for an allocation and consequent recovery of advancements from [the party to whom advancement was made].” Danenberg v. Fitracks, Inc., 2012 WL 11220 (Del.Ch. January 3, 2012) at *6.
There was thus no error of law. Factually, it is certainly true that Phillips had been ousted as a VBenx Director four months before the struggle for control of VBenx began, and that his alleged participation in that struggle was that of Finnegan’s henchman, unrelated to Phillips’s former role as Director. In seeking to disqualify him from any advancement at all, however, the coun-terclaimants overlook the presence of Counts 5 and 6, in which Phillips, then still a Director, is alleged to have steered business of Harvard University away from VBenx for his own account, thereby interfering with a prospective business relationship (Count 5) and violating his fiduciary duties (Count 6). Paragraph 236 expressly connects Phillips’s position as a Director with his knowledge of the opportunity. This event is alleged to have been a contributing cause of his ouster from the Board, and it easily meets the generously-construed “by reason of the fact” or “official capacity” standard; indeed, were it not for Phillips’s capacity as a Director, Count 6 would not state a claim.
The Special Master was therefore correct that although the claims against Phillips, even more than those against Finnegan, arise from alleged conduct committed in part while he was not a Director or Officer of VBenx, they also arise in part by reason of his official capacity as a Director. If allocation is indicated, the plaintiffs-in-counterclaim must shoulder the burden of proposing a formula and supporting it with a rational and factual basis. They have not shown that the Special Master’s finding that to date, they have not done so, was clearly erroneous.
ORDER
For the foregoing reasons, on the Appeal of Defendants/Plaintiffs-in-counterclaim from a Master’s Decision on Fee Advancement (Paper #178), the Initial Report of Special Master on Request for Fee Advancement is AFFIRMED.
APPENDIX I:
ABBREVIATED CHRONOLOGY OF COUNTERCLAIM’S ALLEGATIONS AGAINST FINNEGAN AND PHILLIPS
Date Event_ Para.
Early 2009 Phillips prevents Harvard Univer- 22-24, sity from entering into a prospec- 233-44 five business relationship with Harvard, hoping to capitalize on the Harvard opportunity himself.
March 2009 Phillips and Percia removed from Board; Walter Smith added, but mistakenly omits his own name from action by consent. (Phillips remains a shareholder.)_ 23-25
4/15/09 Smith loans $100,000 to VBenx, convertible to stock 19
5/18/09 Smith loans $300,000 more to VBenx and takes a promissory note_ 19
July 2009 Smith prepares and circulates a revised Action by Consent, reflecting his position on the Board._ 25,39
July 2009 Marcia tells Finnegan he's terminating Brooke; Finnegan enlists Phillips and Percia to seek revenge and gain control of VBenx 29-32
7/24/09 Finnegan and Phillips notify shareholders of special Board meeting 37-39
7/25/09 Meeting agenda, prepared by Finnegan and reviewed by Phillips, circulated to shareholders; Smith and Marcia announce their intent to convert debt to stock to gain majority; Finnegan acknowledges $0.1575 as the "standard" per-share conversion price_ 40-51
7/27/09 Special meeting of VBenx Board; Finnegan, whose proposals for managerial change would not pass, proposes a shareholders' meeting, and learns that with the conversions, he is in the minority._ 52-57
8/1/09 Finnegan "concocts" and begins advancing the claim that Smith's 5/18/09 note is invalid because it did not specify a conversion price; Phillips, too, begins making this argument by late August and tries to enlist Baker to the cause. 62-65
8/19/09 Kenneth B. Phillips, Esq. (the son of defendant Phillips) forms Back Bay Ventures, LLC, of which Finnegan owns 80%. 76
August 2009 Finnegan secretly causes Back Bay to purchase VBenx's $1 million debt to Baytree National Bank and Trust, preventing VBenx from making a payment due to Baytree_ 62-86
9/4/09 Finnegan and Phillips file this action, making false allegations and asserting direct and derivative claims as VBenx shareholders 91-101
*459 [[Image here]]
Fall 2009 Phillips threatens a c. 93A action against VBenx_ 102
1/11/10 Finnegan demands repayment of $432,274.14 on twelve promissory notes, knowing that he did not have twelve notes and that VBenx could not meet the demand, but intending to bankrupt it. 103-125
Jan. 2010 D. Michael Sherman buys the notes" at face value and converts to stock; proceeds used to pay Finnegan, who is removed as Officer and Director but refuses to surrender the "notes." 8,114-19
Early 2010 Finnegan begins submitting "ludicrous" demands that VBenx pay the costs of his defending the Counterclaims. 126-28
March 2010 VBenx's Baytree loan, acquired by Back Bay, comes due; Finnegan and Back Bay refuse to extend, hoping to trigger a default and seize control, funding from "a Sherman-controlled entity" is used to repay the loan; but Back Bay refuses to acknowledge payment in full, return the promissory note, satisfy itself from a Finnegan account pledged to Baytree as collateral, or release a mortgage on Marcia's vacation home pledged as additional collateral. 129-42
Spring 2010 and since. Finnegan and Phillips engage in various enumerated "bad faith litigation tactics." 143-203
APPENDIX II
8 Del. C. §145B Indemnification of officers, directors, employees and agents; insurance.
(a) A corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the corporation) by reason of the fact that the person is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys’ fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by the person in connection with such action, suit or proceeding if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe the person’s conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which the person reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that the person’s conduct was unlawful.
(b) A corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the corporation to procure a judgment in its favor by reason of the fact that the person is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against expenses (including attorneys’ fees) actually and reasonably incurred by the person in connection with the defense or settlement of such action or suit if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable to the corporation unless and only to the extent that the Court of Chanceiy or the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnify for such expenses which the Court of Chanceiy or such other court shall deem proper.
(c) To the extent that a present or former director or officer of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections (a) and (b) of this section, or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys fees) actually and reasonably incurred by such person in connection therewith.
(d) Any indemnification under subsections (a) and (b) of this section (unless ordered by a court) shall be made by the corporation only as authorized in the specific case upon a determination that indemnification of the present or former director, officer, employee or agent is proper in the circumstances because the person has met the applicable standard of conduct set forth in subsections (a) and (b) of this section. Such determination shall be made, with respect to a person *460 who is a director or officer of the corporation at the time of such determination:
(1) By a majority vote of the directors who are not parties to such action, suit or proceeding, even though less than a. quorum; or
(2) By a committee of such directors designated by majority vote of such directors, even though less than a quorum; or
(3) If there are no such directors, or if such directors so direct, by independent legal counsel in a written opinion; or
(4) By the stockholders.
(e) Expenses (including attorneys’ fees) incurred by an officer or director of the corporation in defending any civil, criminal, administrative or investigative action, suit or proceeding may be paid by the corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation as authorized in this section. Such expenses (including attorneys’ fees) incurred by former directors and officers or other employees and agents of the corporation or by persons serving at the request of the corporation as directors, officers, employees or agents of another corporation, partnership, joint venture, trust or other enterprise may be so paid upon such terms and conditions, if any, as the corporation deems appropriate.
(f) The indemnification and advancement of expenses provided by, or granted pursuant to, the other subsections of this section shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses maybe entitled under any bylaw, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in such person’s official capacity and as to action in another capacity while holding such office. A right to indemnification or to advancement of expenses arising under a provision of the certificate of incorporation or a bylaw shall not be eliminated or impaired by an amendment to the certificate of incorporation or the bylaws after the occurrence of the act or omission that is the subject of the civil, criminal, administrative or investigative action, suit or proceeding for which indemnification or advancement of expenses is sought, unless the provision in effect at the time of such act or omission explicitly authorizes such elimination or impairment after such action or omission has occurred.
(g) A corporation shall have power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against such person and incurred by such person in any such capacity, or arising out of such person’s status as such, whether or not the corporation would have the power to indemnify such person against such liability under this section.
(h) For purposes of this section, references to “the corporation” shall include, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its directors, officers, and employees or agents, so that any person who is or was a director, officer, employee or agent of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, shall stand in the same position under this section with respect to the resulting or surviving corporation as such person would have with respect to such constituent corporation if its separate existence had continued.
(i) For purposes of this section, references to “other enterprises” shall include employee benefit plans; references to “fines” shall include any excise taxes assessed on a person with respect to any employee benefit plan; and references to “serving at the request of the corporation” shall include any service as a director, officer, employee or agent of the corporation which imposes duties on, or involves services by, such director, officer, employee or agent with respect to an employee benefit plan, its participants or beneficiaries; and a person who acted in good faith and in a manner such person reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan shall be deemed to have acted in a manner “not opposed to the best interests of the corporation” as referred to in this section.
(j) The indemnification and advancement of expenses provided by, or granted pursuant to, this section shall, unless otherwise provided when authorized or ratified, continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.
(k) The Court of Chancery is hereby vested with exclusive jurisdiction to hear and determine all actions for advancement of expenses or indemnification brought under this section or under any bylaw, agreement, vote of stockholders or disinterested directors, or otherwise. The Court of Chancery may summarily determine a corporation’s obligation to advance expenses (including attorneys’ fees).

 Karen Finnegan, Brent’s wife, is named in some counts in the Counterclaim, but was never a director, officer, employee or agent of VBenx. The First Application for Fee Advancement segregated, and did not claim, fees and expenses attributed to her defense.